UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | |
|---|---|
| **ROGER RIVERA, individually and on behalf of all others similarly situated,** § § § | **DOCKET NO. _____** |
| **Plaintiff,** § § | **JURY TRIAL DEMANDED** |
| vs. § § § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| **LAREDO PETROLEUM, INC.,** § § | |
| **Defendant.** § | |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Roger Rivera ("Plaintiff" or "Rivera") brings this lawsuit to recover unpaid overtime wages and other damages from Laredo Petroleum, Inc. ("Defendant" or "Laredo") under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

2. Laredo employs oilfield personnel, like Rivera, to carry out its work.

3. Rivera, and the other workers like him, were typically scheduled for 12 hour shifts, 7 days a week, for weeks at a time.

4. But Laredo does not pay all of these workers overtime for hours worked in excess of 40 hours in a single workweek.

5. Instead of paying overtime as required by the FLSA, Laredo pays these workers a day-rate and classifies them as independent contractors.

6. This action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION & VENUE

7. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

9. From approximately April 2016 until August 2018, Rivera worked for Laredo as an oilfield contractor and/or completion consultant. Throughout his employment with Laredo, he was paid a day-rate with no overtime compensation and was misclassified as an independent contractor. His consent to be a party plaintiff is attached as Exhibit A.

10. Rivera brings this action on behalf of himself and other similarly situated workers who were classified as independent contractors and paid by Laredo's day-rate system.

11. Laredo paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 hours in a workweek.

12. The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

> **All oilfield workers who worked for Laredo Petroleum, Inc. during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime (the "Putative Class Members").**

13. Rivera seeks conditional and final certification of this FLSA collective action under 29 U.S.C. § 216(b).

14. Defendant Laredo Petroleum, Inc. may be served through its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900 Dallas, Texas 75201.

## COVERAGE UNDER THE FLSA

15. Laredo has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

16. Laredo has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

17. Laredo has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

18. Rivera and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

19. As will be shown through this litigation, Laredo treated Rivera and the Putative Class Members as employees and uniformly dictated the pay practices to which Rivera and the Putative Class Members were subjected.

20. Laredo's misclassification of Rivera and the Putative Class Members as independent contractors does not alter its status as an employer for purposes of the FLSA.

**FACTS**

21. Laredo operates throughout the United States, and in Texas.

22. In order to create the goods, and provide the services, it markets to its customers, Laredo employ oilfield personnel like Rivera and the Putative Class Members.

23. These oilfield workers carry out the hands-on, day-to-day production work of Laredo.

24. Laredo paid Rivera and the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

25. For example, Rivera worked for Laredo from approximately April 2016 until August 2018 as a completion consultant.

26. Rivera was paid on a day-rate basis.

27. Laredo typically scheduled Rivera to work 12 hour shifts, for as many as 7 days a week.

28. During each year of his employment, Rivera regularly worked well in excess of 40 hours in a workweek.

29. But Laredo did not pay Rivera overtime.

30. The work Rivera performed was an essential part of producing Laredo's core products and/or services.

31. During Rivera's employment with Laredo, Laredo exercised control (directly or jointly through another company) over all aspects of Rivera's job.

32. Rivera did not make any substantial investment in order to perform the work Laredo required of him.

33. Laredo determined Rivera's opportunity for profit and loss.

34. Rivera's earning opportunity was based on the number of days Laredo scheduled him to work.

35. Rivera was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in the same job position) to perform their job duties.

36. Rivera was not employed by Laredo on a project-by-project basis, but rather on a consistent basis.

37. While Rivera was classified as an independent contractor, he was regularly on call for Laredo and was expected to drop everything and work whenever needed.

38. Laredo controlled all the significant or meaningful aspects of the job duties performed by Rivera.

39. Laredo controlled the hours and locations Rivera worked, the tools he used, and the rates of pay he received.

40. Even when Rivera worked away from Laredo's offices or job sites without the presence of a direct supervisor, Laredo still controlled all aspects of Rivera's job activities by enforcing mandatory compliance with Laredo's and/or its client's policies and procedures.

41. More often than not, Rivera utilized equipment provided by Laredo to perform his job duties.

42. Rivera did not provide the essential equipment he worked with on a daily basis.

43. Laredo made the large capital investments in buildings, machines, equipment, tools, and supplies in the business that Rivera worked in.

44. Rivera did not incur operating expenses like rent, payroll, marketing, and insurance.

45. Rivera was economically dependent on Laredo during his employment.

46. Laredo set Rivera's rates of pay, his work schedule, and prohibited him (formally or practically) from working other jobs for other companies while they were working on jobs for Laredo.

47. Very little skill, training, or initiative, in terms of independent business initiative, was required of Rivera to perform his job duties.

48. Indeed, the daily and weekly activities of Rivera and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created or mandated by Laredo.

49. Virtually every job function performed by Rivera and the Putative Class Members was pre-determined by Laredo and/or their clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

50. Rivera and the Putative Class Members were generally prohibited from varying their job duties outside of the pre-determined parameters.

51. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to oil and gas operations in the field.

52. Rivera performed routine manual and technical job duties that were largely dictated by Laredo.

53. All of the Putative Class Members perform the similar job duties and are subjected to the similar policies and procedures which dictate the day-to-day activities performed by each person.

54. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

55. The Putative Class Members regularly worked in excess of 40 hours each week.

56. Like Rivera, the Putative Class Members were generally scheduled for daily shifts of 12 (or more) hours for weeks at a time.

57. Laredo did not pay Rivera on a salary basis.

58. Laredo did not pay the Putative Class Members on a salary basis.

59. Laredo paid the Rivera on a day-rate basis.

60. Laredo paid the Putative Class Members on a day-rate basis.

61. Laredo failed to pay Rivera overtime for hours worked in excess of 40 hours in a single workweek.

62. Laredo failed to pay the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

63. Laredo knew, or acted with reckless disregard for whether, Rivera and the Putative Class Members were misclassified as independent contractors.

64. Laredo classifies other workers who perform substantially similar work, under similar conditions, as employees.

65. For example, Laredo classifies one or more of its completion consultants as an "employee" for the purposes of withholding employment taxes.

66. Laredo classifies one or more of its completion consultants as an "employee" for the purposes of its ERISA benefit plans.

67. Laredo's policy of failing to pay Rivera and the Putative Class Members overtime violates the FLSA because these workers are, for the purposes of the FLSA, employees.

68. Laredo's day-rate system violates the FLSA because Rivera and the other day-rate workers classified as independent contractors did not receive any pay for hours worked over 40 hours each week.

69. Because Rivera and the Putative Class Members were misclassified as independent contractors by Laredo, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

### FLSA VIOLATIONS

70. Laredo violated, and is violating, the FLSA by employing Rivera and the Putative Class Members for workweeks longer than 40 hours without paying them overtime.[1]

71. Laredo knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Rivera and the Putative Class Members overtime.

72. Laredo's failure to pay overtime to Rivera and the Putative Class Members was not reasonable, nor was the decision not to pay overtime made in good faith.

73. Accordingly, Rivera and the Putative Class Members are entitled to overtime under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### COLLECTIVE ACTION ALLEGATIONS

---

[1] This same conduct violates numerous state laws. Therefore, following some discovery and the opt-in process, Plaintiff may seek leave to add additional claims under state laws.

74. The illegal pay practices Laredo imposed on Rivera were likewise imposed on the Putative Class Members.

75. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

76. Numerous other individuals who worked with Rivera were classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

77. Based on his experiences and tenure with Laredo, Rivera is aware that Laredo's illegal practices were imposed on other Putative Class Members.

78. The Putative Class Members were improperly classified as independent contractors and not paid overtime when they worked in excess of 40 hours per week.

79. Laredo's failure to pay overtime at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

80. Rivera's experiences are therefore typical of the experiences of the Putative Class Members.

81. The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent class or collective treatment.

82. Rivera has no interests contrary to, or in conflict with, the Putative Class Members.

83. Like each Putative Class Member, Rivera has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

84. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

85. Absent a class and collective action, many members of the Putative Class Members will not obtain redress of their injuries and Laredo will reap the unjust benefits of violating the FLSA and applicable state labor law.

86. Furthermore, even if some of the Putative Class Members could afford individual litigation against Laredo, it would be unduly burdensome to the judicial system.

87. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

88. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether Laredo employed the members of the Class within the meaning of the applicable state and federal statutes, including the FLSA;

    b. Whether the Putative Class Members were improperly misclassified as independent contractors;

    c. Whether Laredo's decision to classify the members of the Class as independent contractors was made in good faith;

    d. Whether Laredo's decision to not pay time and a half for overtime to the members of the Class was made in good faith;

    e. Whether Laredo's violation of the FLSA was willful; and

    f. Whether Laredo's illegal pay practices were applied to the Putative Class Members.

89. Rivera and the Putative Class Members sustained damages arising out of Laredo's illegal and uniform employment policy.

90. Rivera knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

91. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## JURY DEMAND

92. Rivera demands a trial by jury.

## RELIEF SOUGHT

93. WHEREFORE, Rivera prays for judgment against Laredo as follows:

   a. An Order designating the Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order appointing Rivera and his counsel to represent the interests of the FLSA Class;

   c. For an Order finding Laredo liable to Rivera and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

   d. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

   e. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
    Michael A. Josephson
    State Bar No. 24014780
    Federal ID 27157
    mjosephson@mybackwages.com
    Andrew W. Dunlap
    State Bar No. 24078444
    Federal ID 1093163
    adunlap@mybackwages.com
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    Federal ID 21615
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**